IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAYMOND V. BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10 C 65 |
| | ) |
| DR. PARTHASARATHI GHOSH; | ) |
| DR. LIPING ZHANG; and | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

During the times relevant to this lawsuit, plaintiff Raymond Brown was incarcerated at Stateville Correctional Center in Illinois. He alleges that defendants acted with deliberate indifference to his serious medical needs: left knee pain, right elbow pain, and cysts on his legs. Named as defendants are then-Stateville medical staff members: staff physician Liping Zhang and Medical Director Parthasarathi Ghosh. Also named as a defendant is Wexford Health Sources, Inc., which employed Zhang and Ghosh and contracted with the Department of Corrections ("DOC") to provide medical services at Stateville. Defendants have moved for summary judgment dismissing all remaining claims. Plaintiff is represented by counsel.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 n.1 (2009); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010); *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324; *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); *O'Brien v. Encotech Constr.*, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See *Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95

(7th Cir. 2007); *Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *Lampley v. Mitcheff*, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

*Outlaw*, 259 F.3d at 837.

Local Rule 56.1 sets forth certain procedures for summary judgment motions. The movant is to file a properly supported statement of facts consisting of numbered paragraphs. L.R. 56.1(a)(3). The nonmovant is to provide a paragraph-by-paragraph response to the movant's statement. L.R. 56.1(b)(3)(B). Further, the nonmovant may provide a statement of additional facts. L.R. 56.1(b)(3)(C). It is within the court's discretion as to how strictly to apply Local Rule 56.1. As long as the facts are presented in a manageable form, this bench generally will exercise its discretion to not strictly enforce the requirements of Local Rule 56.1. See *Franchini v. Uchicago Argonne, LLC*, 2013 WL 4779184 *2 (N.D. Ill. Sept. 5, 2013); *see also* *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 409 (7th Cir. 2009); *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 527 (7th Cir. 2000). Defendants contend that plaintiff

violates Local Rule 56.1(b)(3) by including additional facts in his response to defendants' fact statement instead of setting them out in a separate statement of additional facts.

> [T]he phrase "additional facts" [as used in Local Rule 56.1(b)(3)(C)] does not mean all facts other than the facts asserted by the movant's Local Rule 56.1(a)(3) statement, but rather only those additional facts that are not intended to show that the movant's asserted facts are disputed. Local Rule 56.1(b)(3)(B) provides that the non-moving party should offer factual responses, along with record citations supporting those responses, that controvert the movant's statements of fact, and that the non-movant must limit those factual responses to facts that are indeed responsive to the movant's assertion--that is, to facts that fairly contradict what the movant has actually asserted. If the non-movant wants to assert facts that go beyond what is fairly responsive to the movant's factual assertion, then he must do so not in his Local Rule 56.1(b)(3)(B) response, but in his "statement . . . of any additional facts that require denial of summary judgment" under Local Rule 56.1(b)(3)(C). *See **Johnson v. Cnty. of Cook**, 2012 WL 2905485, at \*12 (N.D. Ill. July 16, 2012) ("It is inappropriate for a non-movant to include additional facts, meaning facts extraneous to the substance of the paragraph to which the non-movant is responding, in a Local Rule 56.1(b)(3)(B) response. Rather, Local Rule 56.1 requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate statement under Local Rule 56.1(b)(3)(C) of any additional facts that require the denial of summary judgment.") (first emphasis added, citations and internal quotation marks omitted). The line between a responsive fact that should be included in a Local Rule 56.1(b)(3)(B) response and an

extraneous fact that must be stated in a Local Rule 56.1(b)(3)(C) statement is not always bright, . . . .

*Levin v. Grecian*, 974 F. Supp. 2d 1114, 1117-18 (N.D. Ill. 2013). *See also Franchini*, 2013 WL 4779184 at *2-3; *Spitz v. Proven Winners N. Am., LLC*, 969 F. Supp. 2d 994, 998-99 (N.D. Ill. 2013).

Here, plaintiff may stray on occasion, but plaintiff's response certainly is not an egregious violation of limits on additional facts. While not required to do so, nothing in Local Rule 56.1 precluded filing a response to plaintiff's Local Rule 56.1(b)(3)(B) statement so defendants could have responded if they had wanted to do so. *See Franchini*, 2013 WL 4779184 at *3; *Spitz*, 969 F. Supp. 2d at 998-99. All of plaintiff's responses will be considered.

Defendants also contend that some of plaintiff's asserted facts are not supported by citations to an admissible form of evidence. To the extent that is true, such factual assertions have not been credited. Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor, the facts taken as true for purposes of ruling on defendants' motion for summary judgment are as follows.

In December 2008, for the first time at Stateville, plaintiff began requesting medical care for pain in his right elbow and left knee, as well as swelling in the knee. He described the pain in his knee as not as sharp as it had been when he had overextended it ten years earlier. He would particularly notice the pain when he knelt for prayers. The pain affected plaintiff's ability to sleep. Plaintiff was concerned that he may have pulled, fractured, or strained something in his elbow.

Medical Technicians ("med techs") are responsible for processing sick call requests. Med techs are employees of the Illinois Department of Corrections ("IDOC"), not Wexford employees. There is no evidence that, in response to the December 2008 sick call request, a med tech scheduled an appointment for plaintiff at the Health Care Unit ("HCU") or forwarded the request to Zhang, Ghosh, or any other Wexford employee. Beginning in early 2009, plaintiff submitted requests for treatment addressed to defendant Ghosh. The first time plaintiff was seen regarding his elbow and knee was in July 2009. Prior to that, he had submitted at least two requests addressed directly to Ghosh. No evidence is submitted specifically showing that Ghosh had actually received those requests.[1]

---

[1]Plaintiff points to evidence that, in January 2011, Dr. Ghosh acknowledged having prior information about plaintiff that could have been

However, plaintiff testified that he sent such requests to Ghosh and used an internal method for having the letters/requests delivered to Ghosh. It is a reasonable inference that Ghosh received the letters/requests, *see* **Wilson v. Ghosh**, 2013 WL 5818602 *1-2 (N.D. Ill. Oct. 29, 2013), and, since that inference favors plaintiff, it must be drawn on defendants' summary judgment motion.

In February 2009, plaintiff noticed lumps on his leg that were spreading. The lumps caused him pain and interfered with his sleep. Plaintiff was fearful that the lumps might be cancer.

After a couple sick call requests regarding the lumps and not being seen by a doctor, plaintiff submitted a March 8, 2009 emergency grievance complaining about not being seen for the lumps, as well as the knee and elbow. The Warden's office determined the grievance was not an emergency. On March 15, plaintiff's counselor responded to the grievance by stating: "Grievance forwarded to HCU for response."

---

contained in a letter or other request addressed directly to Ghosh. However, that acknowledgment concerned plaintiff's lumps, not the elbow and knee. And by July 2011, it was almost two years after the lumps, as well as the knee and elbow, had been treated. At the 2011 appointment, Ghosh would have had plaintiff's medical file, which also included information about the 2009 ailments.

In the meantime, on March 12, 2009, plaintiff had submitted a grievance complaining that he had not received a response to his March 8 "emergency" grievance and adding that he now also had a virus that was going around. The same response was provided to this grievance, that it had been forwarded to HCU.

On March 16, plaintiff submitted a third grievance complaining about the failure to provide medical services and requesting, among other things, that he be permitted to use the grievance procedure to request medical care since submitting sick call requests was not resulting in treatment being provided.

Ghosh ordinarily did not see grievances unless another doctor consulted with him regarding a grievance. Zhang, though, generally consulted with Ghosh regarding grievances she was considering.[2] At the time of his deposition, Ghosh did not specifically recall seeing any of plaintiff's grievances.. During a time period in 2009 and 2010, Zhang would respond to inmate grievances concerning medical care. She responded to plaintiff's three March 2009 grievances. At her deposition, however, she had no specific recollection of the grievances. Her ordinary practice would have been to review the inmate's medical records when

---

[2]Ghosh's and Zhang's testimony differed regarding Zhang consulting with Ghosh. On defendants' summary judgment motion, Zhang's testimony is taken as true since it favors plaintiff.

considering a grievance. In response to a grievance, Zhang could direct prison personnel to schedule the inmate for an appointment. In a March 25 memorandum, after reviewing plaintiff's first two grievances, Zhang directed that plaintiff be scheduled for an eye and physical examination (plaintiff had also been complaining about vision problems). In her April 20 memorandum regarding the third grievance, Zhang noted that plaintiff had received proper care and that he should "seek sick call through the Med-Tech as need arises." It was not until May 18 and May 22 that the grievance office concurred with Zhang's two recommendations. Although it was indicated by both Zhang and the grievance office that plaintiff had received proper care, he still had not been seen by a doctor or physician's assistant.

After receiving the grievance responses and thereafter continuing to submit sick call requests, plaintiff was seen by physician's assistant La Tanya Williams on July 9, 2009. This appointment occurred a few days after plaintiff had shown a med tech the lumps on his legs. Williams noted no swelling in the knee. She told plaintiff that he had tendinitis in the elbow, but did not record that diagnosis. Williams prescribed Tylenol and antibiotics and recommended blood tests that might show possible causes for the lumps. Williams also recommended

a follow-up appointment in two weeks. There was no two-week follow up appointment. Within two weeks, on July 20, blood was taken and Zhang saw the results on July 23. While plaintiff was low on white blood cells and "bun/create ratio," Zhang determined there were no significant abnormalities and no support for hepatitis. She did not communicate the test results to plaintiff; such information would ordinarily be provided to the patient at the next appointment.

Plaintiff thought he would automatically be scheduled for a two-week followup appointment, but he needed to submit a written request. He did speak to a med tech about needing a follow-up appointment. On August 5, 2009, he submitted a grievance regarding no follow-up appointment and not finding out his blood-test results. He also noted continued lumps. After an oral or written request submitted to a med tech on August 7, plaintiff was scheduled for an August 13 sick call appointment. Earlier than that date, however, plaintiff was seen by Zhang at the August 10 sick call. She diagnosed the lumps as infected cysts and prescribed further antibiotics. She also gave plaintiff 10 Tylenol capsules.

The lumps left discoloration on plaintiff's legs, but the pain eventually went away. Plaintiff does not point to evidence of any permanent injury to his knee or elbow, nor continuing pain.

Plaintiff bears the burden of showing he had an objectively serious medical need, each defendant was aware of it, and each defendant acted with deliberate indifference to the need. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). To be deliberately indifferent, a responsible official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," draw the inference that there is a significant likelihood the harm will occur, and fail to take reasonable steps to prevent the harm. *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766775-76 (7th Cir. 2014). Defendants contend the elbow and knee pains were not serious medical needs, any delays in treatment for which they were responsible did not cause harm, and neither of the individual defendants acted with deliberate indifference. As to Wexford, it is further contended that, to the extent any viable claim remains against either individual defendant, evidence does not support that any wrongdoing was pursuant to a policy, practice, or custom of Wexford. Since deliberate indifference has not been shown, it can be assumed that the knee and elbow injuries were serious medical needs and it is unnecessary to address whether Wexford would be responsible for any wrongdoing by Ghosh or Zhang.

There is no evidence that Zhang was aware of any of plaintiff's ailments prior to being assigned the duty of responding to his March 2009 grievances. Zhang timely responded to the grievances and directed that plaintiff be seen by medical personnel. It was nearly two months after Zhang's initial March 25 memorandum before prison officials finished processing the grievance. There is, however, no evidence that Zhang or Ghosh was responsible for any delay in the processing.³ Additionally, there is no evidence that Zhang or Ghosh was responsible for further delays resulting in plaintiff not being seen by a physician's assistant until July 9, 2009. Whether the delays were caused by plaintiff's failure to follow prison sick call procedures or med techs' failures to schedule him for an appointment, the conduct of med techs (who are employees of IDOC) cannot be attributed to the individual defendants or Wexford. *Cf*. ***Jones v. Cullinan***, 2013 WL 1340405 *9 (N.D. Ill. March 31, 2013); ***English v. Smith***, 2008 WL 4287628 *1, 5-6 (N.D. Ill. Sept. 15, 2008). Zhang did her part by directing that plaintiff be scheduled for an appointment. Assuming, as must be done on summary judgment, that Ghosh was aware of plaintiff's situation, Zhang's direction that there be an appointment came after plaintiff's first letter to Ghosh.

---

³No opinion is expressed regarding whether delays caused plaintiff to suffer further serious injury or suffering.

Plaintiff's testimony that he sent at least one more letter to Ghosh prior to the July 9, 2009 appointment lacks specificity from which it could be determined that Ghosh was aware that an appointment was not being scheduled and did not act in a timely manner prior to July 9.

By July 9, the knee injury, at least the swelling, had subsided and plaintiff was provided Tylenol and antibiotics. On July 23, Zhang saw the blood results supporting that there was not a more serious problem causing the lumps. There is no evidence to support that any injury occurred by plaintiff not being seen by Zhang or another medical attendant between July 23 and August 10, a period of 18 days. There is also no evidence that Zhang or Ghosh were responsible for failing to schedule an earlier appointment. The evidence before the court does not support that Zhang, Ghosh, or Wexford acted with deliberate indifference. Summary judgment will be granted in defendant's favor.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [98] is granted. The Clerk of the Court is directed to enter judgment in

favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: JULY 9, 2014